**FILED**

SEP - 2 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT   *2 10 MC 90 MCE EFB*

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> MOISES PACHECO, ADVANCED MONEY MANAGEMENT, INC., and BUSINESS DEVELOPMENT & CONSULTING CO., <br><br> Defendants, <br><br> and <br><br> AP PREMIUM VALUE FUND I LIMITED-LIABILITY LP; AP PREMIUM VALUE FUND II, LLC; AP PREMIUM VALUE FUND III, LLC; AP PREMIUM VALUE FUND IV, LLC; CAPITAL PARTNERSHIP GROUP, LLC; AP CAPITAL, LLC; REAL ESTATE INVESTMENT GROUP, LLC; MATTHEW LA MADRID; THE PREMIUM RETURN FUND III LIMITED-LIABILITY LP; PALLADIUM HOLDING COMPANY; DONALD E. LOPEZ; FOUR SQUARE PRODUCTIONS, INC.; and ARTURO CASTANARES, <br><br> Relief Defendants. | Case No. 09-CV-1355 MMA (RBB) <br><br> **ORDER GRANTING MOTION TO APPOINT RECEIVER AND APPOINTING STEPHEN DONELL AS PERMANENT RECEIVER FOR DEFENDANTS ADVANCED MONEY MANAGEMENT, INC. AND BUSINESS DEVELOPMENT & CONSULTING CO., AND RELIEF DEFENDANTS AP PREMIUM VALUE FUND I LIMITED-LIABILITY LP; AP PREMIUM VALUE FUND II, LLC; AP PREMIUM VALUE FUND III, LLC; AP PREMIUM VALUE FUND IV, LLC; CAPITAL PARTNERSHIP GROUP, LLC; AP CAPITAL, LLC; AND REAL ESTATE INVESTMENT GROUP, LLC** <br><br> [Doc. No. 27] |

On July 26, 2010, Plaintiff Security and Exchange Commission filed a Motion of Plaintiff Securities and Exchange Commission ("Commission") for an Order appointing an equity receiver over defendants Advanced Money Management, Inc. and Business Development & Consulting Co. and relief defendants AP Premium Value Fund I Limited-Liability LP, AP Premium Value Fund II, LLC, AP Premium Value Fund III, LLC, AP Premium Value Fund IV, LLC, Capital Partnership Group, LLC, AP Capital, LLC, and Real Estate Investment Group, LLC. (Doc. No. 27.) The motion is unopposed. The Court having considered the evidence presented in support thereof, and the files and records of this matter; and good cause appearing, the Court **ORDERS** as follows:

**I.**

IT IS HEREBY ORDERED that Stephen Donell is appointed as permanent receiver for Defendants Advanced Money Management, Inc. ("AMM") and Business Development & Consulting Co. ("BD&C") and Relief Defendants AP Premium Value Fund I Limited-Liability LP ("AP PVF I"); AP Premium Value Fund II, LLC ("AP PVF II"); AP Premium Value Fund III, LLC ("AP PVF III"); AP Premium Value Fund IV, LLC ("AP PVF IV"); Capital Partnership Group, LLC ("CPG"); AP Capital, LLC ("AP Capital"); and Real Estate Investment Group, LLC ("REIG"), and their subsidiaries and affiliates, with full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control of any of the entities in receivership and that such receiver is immediately authorized, empowered and directed:

A.    to have access to and to collect and take custody, control, possession, and charge of all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, wherever located, of or managed by any of the entities in receivership with full power to sue, foreclose, marshal, collect, receive, and take into possession all such property;

B.    to have control of, and to be added as the sole authorized signatory for, all

1

1   accounts of the entities in receivership, and all accounts over which any of their
2   employees or agents have signatory authority, at any bank, title company, escrow
3   agent, financial institution or brokerage firm which has possession, custody or
4   control of any assets or funds of any of the entities in receivership or which
5   maintains any accounts over which any of the entities in receivership and/or any
6   of their officers, employees or agents have signatory authority;

7   C.   to conduct such investigation and discovery as may be necessary to locate,
8   account for and recover all of the assets of or managed by (and to account for and
9   pursue recovery of the losses of) any of the entities in receivership and to engage
10   and employ attorneys, accountants and other persons to assist in such
11   investigation and discovery;

12   D.   to take such action as is necessary and appropriate to preserve and take control of
13   and to prevent the dissipation, concealment, or disposition of any assets of or
14   managed by any of the entities in receivership;

15   E.   to make an accounting, as soon as practicable, to this Court and the Commission
16   of the assets and financial condition of the entities in receivership and the assets
17   under their management, and to file the accounting with the Court and deliver
18   copies thereof to all parties;

19   F.   to make such payments and disbursements from the funds and assets taken into
20   custody, control and possession or thereafter received by him or her, and to incur,
21   or authorize the making of, such agreements as may be necessary and advisable in
22   discharging his or her duties as permanent receiver;

23   G.   to employ attorneys, accountants and others to investigate and, where appropriate,
24   to institute, pursue, and prosecute all claims and causes of action of whatever kind
25   and nature which may now or hereafter exist as a result of the activities of the
26   entities in receivership; and

27   H.   to have access to, monitor, and redirect all mail (including email and facsimile) of
28   the entities in receivership in order to review such mail which he or she deems

1    relates to their business and the discharging of his or her duties as permanent

2    receiver.

3                                               **II.**

4         IT IS FURTHER ORDERED that defendant Moises Pacheco, the entity defendants and

5    relief defendants that are the subject of this Order, and their subsidiaries and affiliates, and their

6    officers, agents, servants, employees and attorneys, and any other persons who are in custody,

7    possession or control of any assets, collateral, books, records, papers, or other property of or

8    managed by any of them, or their subsidiaries or affiliates, shall forthwith give access to and

9    control of such property to the permanent receiver.

10                                              **III.**

11        IT IS FURTHER ORDERED that no officer, agent, servant, employee, or attorney of

12   Advanced Money Management, Inc. and Business Development & Consulting Co. (the

13   "Defendants") and relief defendants AP Premium Value Fund I Limited-Liability LP, AP

14   Premium Value Fund II, LLC, AP Premium Value Fund III, LLC, AP Premium Value Fund IV,

15   LLC, Capital Partnership Group, LLC, AP Capital, LLC, and Real Estate Investment Group, or

16   their subsidiaries or affiliates shall take any action or purport to take any action, in the name of

17   or on behalf of any of them, or any of their subsidiaries or affiliates, without the written consent

18   of the permanent receiver or order of this Court.

19                                              **IV.**

20        IT IS FURTHER ORDERED that, except by leave of this Court, during the pendency of

21   this receivership, all clients, investors, trust beneficiaries, note holders, creditors, claimants,

22   lessors, and all other persons or entities seeking relief of any kind, in law or in equity, from

23   Advanced Money Management, Inc. and Business Development & Consulting Co. and relief

24   defendants AP Premium Value Fund I Limited-Liability LP, AP Premium Value Fund II, LLC,

25   AP Premium Value Fund III, LLC, AP Premium Value Fund IV, LLC, Capital Partnership

26   Group, LLC, AP Capital, LLC, and Real Estate Investment, or their subsidiaries or affiliates, and

27   all persons acting on behalf of any such investor, trust beneficiary, note holder, creditor,

28   claimant, lessor, or other person, including sheriffs, marshals, servants, agents, employees, and

                                                 3

1   attorneys, are hereby restrained and enjoined from, directly or indirectly, with respect to any of
2   these entities:

3         A.    commencing, prosecuting, continuing or enforcing any suit or proceeding (other
4              than the present action by the Commission) against any of them;

5         B.    using self-help or executing or issuing or causing the execution or issuance of any
6              court attachment, subpoena, replevin, execution or other process for the purpose
7              of impounding or taking possession of or interfering with or creating or enforcing
8              a lien upon any property or property interests owned by or in the possession of
9              any of the entities, wherever situated; and

10         C.    doing any act or thing whatsoever to interfere with taking control, possession or
11              management by the temporary receiver appointed hereunder of the property and
12              assets owned, controlled or managed by or in the possession of any of the entities,
13              or in any way to interfere with or harass the temporary receiver or his or her
14              attorneys, accountants, employees or agents or to interfere in any manner with the
15              discharge of the permanent receiver's duties and responsibilities hereunder.

16   **V.**

17         IT IS FURTHER ORDERED that Moises Pacheco, Advanced Money Management, Inc.
18   and Business Development & Consulting Co. (the "Defendants") and relief defendants AP
19   Premium Value Fund I Limited-Liability LP, AP Premium Value Fund II, LLC, AP Premium
20   Value Fund III, LLC, AP Premium Value Fund IV, LLC, Capital Partnership Group, LLC, AP
21   Capital, LLC, and Real Estate Investment, and their subsidiaries, affiliates, officers, agents,
22   servants, employees and attorneys, shall cooperate with and assist the permanent receiver and
23   shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the
24   permanent receiver or his or her attorneys, accountants, employees or agents, in the conduct of
25   the temporary receiver's duties or to interfere in any manner, directly or indirectly, with the
26   custody, possession, management, or control by the temporary receiver of the funds, assets,
27   collateral, premises, and choses in action described above.

28

4

**VI.**

IT IS FURTHER ORDERED that Moises Pacheco, Advanced Money Management, Inc. and Business Development & Consulting Co. (the "Defendants") and relief defendants AP Premium Value Fund I Limited-Liability LP, AP Premium Value Fund II, LLC, AP Premium Value Fund III, LLC, AP Premium Value Fund IV, LLC, Capital Partnership Group, LLC, AP Capital, LLC, and Real Estate Investment Group shall pay, jointly and severally, the costs, fees and expenses of the permanent receiver incurred in connection with the performance of his or her duties described in this Order, including the costs and expenses of those persons who may be engaged or employed by the permanent receiver to assist him or her in carrying out his or her duties and obligations. All applications for costs, fees and expenses for services rendered in connection with the receivership other than routine and necessary business expenses in conducting the receivership, such as salaries, rent and any and all other reasonable operating expenses, shall be made by application setting forth in reasonable detail the nature of the services and shall be heard by the Court.

**VII.**

IT IS FURTHER ORDERED that no bond shall be required in connection with the appointment of the permanent receiver. Except for an act of gross negligence, the temporary receiver shall not be liable for any loss or damage incurred by any of the defendants, their officers, agents, servants, employees and attorneys or any other person, by reason of any act performed or omitted to be performed by the permanent receiver in connection with the discharge of his or her duties and responsibilities.

IT IS SO ORDERED.

Dated: August 27, 2010

I hereby attest and certify on ___8/31/10___
That the foregoing document is a full, true and correct
copy of the original on file in my office and in my legal
custody.
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ Deputy

Honorable Michael M. Anello
United States District Judge

5

1  JOHN M. McCOY III, Cal. Bar No. 166244
   E-mail: mccoyj@sec.gov
2  PETER F. DEL GRECO, Cal. Bar No. 164925
   E-mail: delgrecop@sec.gov

3  Securities and Exchange Commission
   Rosalind Tyson, Regional Director
4  Michele Wein Layne, Associate Regional Director
   5670 Wilshire Boulevard, 11th Floor
5  Los Angeles, California 90036
   Telephone: (323) 965-3998
6  Facsimile: (323) 965-3908

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  SECURITIES AND EXCHANGE
    COMMISSION,                          Case No, U9 CV 1355 W       RBB
11                                       COMPLAINT FOR VIOLATIONS OF
              Plaintiff,                 THE FEDERAL SECURITIES LAWS
12
        vs.
13
    MOISES PACHECO, ADVANCED MONEY
14  MANAGEMENT, INC., and BUSINESS
    DEVELOPMENT & CONSULTING CO.,
15
              Defendants,
16
        and
17
    AP PREMIUM VALUE FUND I LIMITED-
18  LIABILITY LP; AP PREMIUM VALUE
    FUND II, LLC; AP PREMIUM VALUE
19  FUND III, LLC; AP PREMIUM VALUE
    FUND IV, LLC; CAPITAL PARTNERSHIP
20  GROUP, LLC; AP CAPITAL, LLC; REAL
    ESTATE INVESTMENT GROUP, LLC;
21  MATTHEW LA MADRID; THE PREMIUM
    RETURN FUND III LIMITED-LIABILITY
22  LP; PALLADIUM HOLDING COMPANY;
    DONALD E. LOPEZ; FOUR SQUARE
23  PRODUCTIONS, INC.; and ARTURO
    CASTANARES,
24
              Relief Defendants.
25

26
    I hereby attest and certify on ___ 8/31/10
27  That the foregoing document is a full, true and correct
    copy of the original on file in my office and in my legal
28  custody.
        CLERK, U.S. DISTRICT COURT
        SOUTHERN DISTRICT OF CALIFORNIA
    By _____ Deputy

FILED
2009 JUN 24  AM 10: 37
CLERK-US DISTRICT COURT
DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
SEP - 2 2010
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

1      Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

2      **JURISDICTION AND VENUE**

3      1.      The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1)

4 and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) &

5 77v(a); Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27 of the Securities Exchange Act of 1934

6 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa; and Sections 209(d),

7 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-

8 9(d), 80b-9(e)(1) and 80b-14.

9      2.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15

10 U.S.C. § 77v(a), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and Section 214 of the

11 Advisers Act, 15 U.SC. § 80b-14, because certain of the transactions, acts, practices, and courses

12 of conduct constituting the violations alleged herein occurred within the Southern District of

13 California, each of the entity defendants is located in this district, and the individual defendant

14 resides in this district.

15      3.      The Defendants, directly and indirectly, have made, and are making, use of the

16 means and instrumentalities of interstate commerce and of the mails or of the facilities of a

17 national exchange in connection with the acts, practices, and courses of business alleged herein

18 in the Southern District of California and elsewhere.

19      **SUMMARY**

20      4.      This matter concerns a Ponzi-like scheme operated by defendant Moises Pacheco,

21 and the two entities he controls, Advanced Money Management, Inc. ("AMM") and Business

22 Development & Consulting Co. ("BD&C" and, collectively with Pacheco and AMM,

23 "Defendants"). Since January 2005, AMM and BD&C acted as the investment adviser to five

24 purported hedge funds (collectively, the "Funds"). From January 2005 through June 2008, the

25 Defendants raised more than $14.7 million from more than 200 investors in the Funds through an

26 unregistered offering of securities in the form of investment contracts.

27      5.      Pacheco told investors that the Funds exclusively relied upon the purchase and

28 sale of covered call options to generate substantial trading profits ranging from 30% to 48% per

1   year.  In reality, the returns Pacheco provided to Fund investors were almost entirely financed

2   with investor principal.  Trading activity in the Funds generated cumulative profits of only about

3   $367,000, yet the Funds paid cumulative purported returns totaling more than $9.7 million to

4   their investors.  In short, Pacheco operated the Funds as a Ponzi-like scheme.

5        6.    The Defendants also deployed investor principal in ways that significantly

6   deviated from their avowed covered call options trading strategy.  The most egregious example

7   of this occurred in September 2007, when, unbeknownst to the Fund investors, the Defendants

8   contributed $3 million of investor monies toward a joint $10 million investment in relief

9   defendant Palladium Holding Company, for the ostensible purpose of engaging in currencies

10   trading and the overseas trading of medium-term notes.  Most of this money was quickly

11   dissipated by Palladium Holding and its principal, relief defendant Donald E. Lopez.  The

12   Defendants transferred nearly $2 million to several other relief defendants, as well as directly to

13   Pacheco, all of which was undisclosed to Fund investors.

14        7.    The Defendants, by engaging in the conduct described in this Complaint, violated

15   the antifraud and securities registration provisions of the federal securities laws.  The

16   Commission requests that the Court permanently enjoin each of the Defendants from further

17   violations of these laws, impose a substantial civil penalty on each of the Defendants, require the

18   Defendants to disgorge with prejudgment interest all monies representing proceeds from the

19   Defendants' fraudulent conduct and from third parties receiving monies from the Funds

20   (collectively, the "Relief Defendants").  In addition, the Commission seeks the appointment of a

21   receiver over entity defendants AMM and BD&C.

22        **THE DEFENDANTS**

23        8.    **Moises Pacheco**, age 41, is a resident of Chula Vista, California.  Pacheco is an

24   officer and director of AMM and controls BD&C.  Through his control of AMM and BD&C,

25   Pacheco controls the Funds.  In addition, Pacheco is the managing member of relief defendant

26   AP Capital, LLC, and controls relief defendant Real Estate Investment Group, LLC.  Pacheco

27   also does business as AP Capital and Real Estate Investment Group.  Pacheco is not registered as

28   an investment adviser under the Advisers Act.

2

1    9.    **Advanced Money Management, Inc.** is a Nevada corporation located in Chula

2   Vista, California. It is not registered with the Commission in any capacity and it has not

3   registered any offering of its securities under the Securities Act or a class of securities under the

4   Exchange Act. AMM is controlled by Pacheco, who is its sole director. AMM is the general

5   partner of AP PVF I.

6    10.    **Business Development and Consulting Co.** is a California corporation located in

7   Chula Vista, California. It is not registered with the Commission in any capacity and it has not

8   registered any offering of its securities under the Securities Act or a class of securities under the

9   Exchange Act. BD&C is controlled by Pacheco. BD&C is the managing member of AP PVF II,

10   AP PVF III, AP PVF IV and CPG.

11                    **THE RELIEF DEFENDANTS**

12    11.    **AP Premium Value Fund I Limited-Liability LP** is a Nevada limited

13   partnership formed in December 2004. Its general partner is AMM. Between January 2005 and

14   June 2008, AP PVF I raised more than $5.8 million from more than 80 investors. It is not

15   registered with the Commission in any capacity and it has not registered any offering of its

16   securities under the Securities Act of a class of securities under the Exchange Act.

17    12.    **AP Premium Value Fund II, LLC** is a California limited liability company

18   formed in November 2005. Its managing member is BD&C. Between February 2006 and May

19   2008, AP PVF II raised more than $2.3 million from more than 35 investors. It is not registered

20   with the Commission in any capacity and it has not registered any offering of its securities under

21   the Securities Act of a class of securities under the Exchange Act.

22    13.    **AP Premium Value Fund III, LLC** is a California limited liability company

23   formed in April 2006. Its managing member is BD&C. Between June 2006 and May 2008, AP

24   PVF III raised almost $2.4 million from more than 35 investors. It is not registered with the

25   Commission in any capacity and it has not registered any offering of its securities under the

26   Securities Act of a class of securities under the Exchange Act.

27    14.    **AP Premium Value Fund IV, LLC** is a California limited liability company

28   formed in April 2006. Its managing member is BD&C. Between September 2006 and May

                                        3

1  2008, AP PVF IV raised more than $2.2 million from more than 35 investors. It is not registered

2  with the Commission in any capacity and it has not registered any offering of its securities under

3  the Securities Act of a class of securities under the Exchange Act.

4       15.    **Capital Partnership Group, LLC** is a California limited liability company

5  formed in January 2007. Its managing member is BD&C. Between March 2007 and May 2008,

6  CPG raised more than $1.9 million from more than 25 investors. It is not registered with the

7  Commission in any capacity and it has not registered any offering of its securities under the

8  Securities Act of a class of securities under the Exchange Act.

9       16.    **AP Capital, LLC** is a California limited liability company formed in October

10  2006. Pacheco is a managing member of AP Capital.

11       17.    **Real Estate Investment Group, LLC** is a Nevada limited liability company

12  formed in 2004. REIG Capital, Inc. is the managing member of REIG; Pacheco is a director of

13  REIG Capital.

14       18.    **Matthew La Madrid** is a resident of Jamul, California. La Madrid formerly did

15  business as Vision Quest Investments, which received $3 million from the Funds for investment

16  with Palladium Holding Company. La Madrid was the president and treasurer of Plus Money,

17  Inc., a Nevada corporation based in El Cajon, California that managed The Premium Return

18  Funds, a collection of purported hedge funds, until April 2008, when Plus Money and the

19  Premium Return Funds were placed into receivership. On March 3, 2009 a Judgment of

20  Permanent Injunction and Other Relief was entered against La Madrid in *SEC v. Plus Money,*

21  *Inc., et al., Case No. 08-CV-0764 MMA (NLS)*, a matter pending in the U.S. District Court for the

22  Southern District of California.

23       19.    **The Premium Return Fund III Limited-Liability Limited Partnership** is a

24  Nevada-based limited partnership formed in February 2006. It was controlled by La Madrid

25  through Plus Money, its general partner, until placed into receivership in April 2008. Premium

26  Return Fund III received transfers totaling $75,000 from the Defendants. Premium Return Fund

27  III is a relief defendant in *SEC v. Plus Money.*

28

1    20.    **Palladium Holding Company** is a Colorado corporation formed in August 2003.
2    In November 2007, La Madrid wired $10 million to Palladium, which sum included $3 million
3    which the Funds had provided to La Madrid.  Palladium is a relief defendant in *SEC v. Plus*
4    *Money*.

5    21.    **Donald Lopez** is a resident of Denver, Colorado.  Lopez incorporated Palladium
6    and is its sole director.  Lopez is a relief defendant in *SEC v. Plus Money*. On May 26, 2009,
7    Lopez was indicted on charges of obstruction of justice and criminal contempt stemming from
8    his conduct in the *Plus Money* matter, by a grand jury convened in the U.S. District Court for the
9    Southern District of California, *United States of America v. Donald Lopez, Case No. 09-CR-2006*
10   *MMA*.

11   22.    **Arturo Castanares** is the CEO of Four Square Productions, Inc., and controls a
12   bank account in its name to which Pacheco wired $960,000 in November 2006.

13   23.    **Four Square Productions, Inc.** is a California corporation formed in 1977 and
14   located in San Diego, California.

15                          **FACTUAL BACKGROUND**

16   **A.    The Defendants Conducted an Unregistered Offering of Securities**

17   24.    Pacheco controls AMM and BD&C, and through AMM and BD&C, he controls
18   the Funds.

19   25.    Between January 2005 and June 2008, Pacheco, through AMM and BD&C, raised
20   more than $14.7 million from more than 200 investors in the Funds.

21   26.    Pacheco told Fund investors that he had developed a lucrative investment strategy
22   involving the purchase and sale of covered call options.  Pacheco claimed that the Funds had
23   generated returns ranging from 2.5% to 4% per month during their existence, and continued to
24   claim that they generated returns in that range until January 2008, when he reduced the returns to
25   1.25% per month.  Pacheco told Fund investors that the reduction was due to deteriorating
26   economic conditions.

27   27.    Investors were told that these monthly payments represented returns on their
28   investments as a result of Pacheco's covered call option trading strategy.

                                    5

1        28.     Investors were principally solicited through word of mouth referral.  Most Fund

2   investors live in or around the Chula Vista, California area, and know either Pacheco, one of his

3   friends or family members, or another investor.  Some investors reside in other states, including

4   Arizona.

5        29.     Pacheco did not utilize written offering documents and investors did not sign

6   written investment agreements.  Pacheco provided investors with certificates of ownership

7   memorializing their interest in the appropriate Fund.

8        30.     Pacheco made no effort to determine whether investors were accredited or

9   sophisticated, and did not provide investors with financial statements.

10        31.     Pacheco controlled all trading activity in the Funds' brokerage accounts, had sole

11   signature authority on all of the Funds' bank accounts, and made all investment decisions on

12   behalf of the Funds.

13        32.     Monthly account statements for the Funds' bank and brokerage accounts were

14   sent to Pacheco's home and/or business addresses.

15        33.     Pacheco created and disseminated monthly statements and occasional letters

16   containing representations about purported Fund profitability to Fund investors.

17        34.     Although each Fund utilized separate bank and brokerage accounts, and issued

18   separate monthly spreadsheets and certificates of ownership, there was no functional difference

19   between the Funds.  The representations about the Funds' investment strategies and rates of

20   return were identical.

21        35.     Pacheco did not specify the amount of any fee or commission to which he was

22   entitled.

23        36.     AMM, BD&C and the Funds are not registered with the Commission in any

24   capacity and have not registered any offering of their securities under the Securities Act or a

25   class of securities under the Exchange Act.

26        **B.**     **The Defendants Operated a Fraudulent Ponzi-Like Scheme**

27        37.     Each month, Pacheco provided Fund investors with a spreadsheet that identified

28   (a) each investor in the Fund, (b) the amount of his or her investment, (c) the rate of return to be

1  paid that month, and (d) the dollar amount to be returned to each investor. These spreadsheets
2  were often accompanied by documents identifying the trading activity in the Fund that month
3  and/or the Fund's positions at month's end. These documents – and the monthly payments made
4  by Pacheco – provided Fund investors with assurance that they were investing profitably and that
5  their reliance on Pacheco's trading expertise was well-placed.

6       38.    Pacheco did not generate the returns he claimed to have made. According to
7  these documents, the Funds were generating trading profits of 2.5% to 4% per month. In reality,
8  from January 2005 through June 2008 – a span of 42 months – the Funds had net profits of
9  $367,001 on the millions of dollars under their management, a return of about 1% per year.

10       39.    During the same time period, the Funds paid out more than $9.7 million in
11  purported monthly profits to Fund investors. To bridge the enormous difference between the
12  actual profits and the ersatz ones, Pacheco drew upon the only financial resource available to him
13  – investor principal. Thus, the Defendants' representations that the monthly payments were
14  funded with trading profits were false.

15      **C.**    **The Defendants Failed to Disclose Their Departure From Their Avowed**
16            **Investment Strategy**

17           **1.**    **The Transfers to La Madrid Through Vision Quest Investments**

18       40.    Undisclosed to investors, in the fall of 2007, Pacheco authorized wire transfers
19  totaling $3 million from the Funds to a bank account in the name of Vision Quest Investments, a
20  dba of relief defendant Matthew La Madrid. Specifically, on September 18, 2007, Pacheco
21  wired $500,000 each from AP PVF III and IV and $1 million from CPG; and on October 8,
22  2007, Pacheco wired $250,000 from AP PVF III, $500,000 from AP PVF IV, and $250,000 from
23  CPG. La Madrid and Plus Money, Inc., which La Madrid controlled, transferred an additional $7
24  million to Vision Quest.

25       41.    On November 14, Vision Quest transferred $10 million – including the $3 million
26  provided by Pacheco – to relief defendant Palladium Holding Company, a Denver based entity
27  controlled by relief defendant Donald Lopez.

28

7

1    42.    La Madrid and/or Lopez told Pacheco that Palladium would use the monies

2    provided by Vision Quest in an overseas trading program involving the purchase and sale of

3    medium-term notes and the trading of foreign currencies. These strategies represented a stark

4    departure from the Funds' avowed strategy of engaging solely in the trading of covered calls.

5    43.    Upon receipt of the $10 million from Vision Quest, Palladium transferred $5

6    million to its brokerage account and, within the next month, wired $4.5 million to various

7    individuals and entities, including $500,000 back to La Madrid, $1.8 million to several real estate

8    title companies, $95,000 to the purchase of two automobiles, and another $90,000 to a Denver

9    car dealership.

10    44.    Palladium quickly began dissipating the $5 million transferred into its brokerage

11    account by engaging in numerous short-sell transactions involving Treasury bonds. By April

12    2008, this activity had caused Palladium to lose more than half of the account's value.

13    45.    Pacheco did not timely disclose to Fund investors that he had transferred Fund

14    monies to Vision Quest, his reasons for doing so, or the extent to which Palladium had dissipated

15    Fund assets. It was not until March 2008 that Pacheco disclosed to Fund investors that, because

16    prospects in the equities markets were dim, he had decided, at some prior unspecified time, to

17    commit an unspecified amount of investor monies to currencies trading in order to generate the

18    returns to which Fund investors had become accustomed. And it was not until June 2008 that

19    Pacheco disclosed to Fund investors that he had invested $3 million of their monies with La

20    Madrid and Palladium, that the monies had been lost, and that "[unspecified] millions have been

21    lost in other [unspecified] investments."

22    **2.    The Transfers to Four Square Productions and Arturo Castanares**

23    46.    On November 16, 2006, Pacheco authorized wire transfers of $660,000 and

24    $300,000 from AP PVF III and IV, respectively, to Four Square Productions, Inc. and Arturo

25    Castanares.

26    47.    The monies were not used to purchase or sell covered calls and they did not

27    generate any return for investors in the Funds.

28

1       48.     The fact of the transfers, their purpose, and the relinquishment of Pacheco's

2 control over investor monies were never disclosed to Fund investors.

3             **3.**     **The Transfers to Premium Return Fund III**

4       49.     In January 2008, Pacheco authorized wire transfers of $30,000 and $45,000 from

5 AP PVF III and CPG, respectively, to Premium Return Fund III, the purported hedge fund

6 controlled by La Madrid.

7       50.     The monies were not used to purchase or sell covered calls and they did not

8 generate any return for investors in the Funds.

9       51.     The fact of the transfers, their purpose, and the relinquishment of Pacheco's

10 control over investor monies were never disclosed to Fund investors.

11     **D.**     **The Defendants Fraudulently Diverted Investor Monies to Pacheco and**

12                 **Pacheco-Controlled Entities**

13       52.     From January 2005 through June 2008, Pacheco transferred $879,809 from the

14 Funds to himself and/or to entities he controls, including AP Capital (which received net

15 transfers of more than $183,000) and REIG (which received transfers totaling $45,000).

16       53.     The monies were not used to purchase or sell covered calls and they did not

17 generate any return for investors in the Funds.

18       54.     The fact of the transfers and their purpose were never disclosed to Fund investors.

19                                          **FIRST CLAIM FOR RELIEF**

20                      **UNREGISTERED OFFER AND SALE OF SECURITIES**

21                  **Violations of Sections 5(a) and 5(c) of the Securities Act**

22                           **(Against All Defendants)**

23       55.     The Commission realleges and incorporates by reference paragraphs 1 through 54

24 above.

25       56.     Defendants AMM, BD&C, and Pacheco, and each of them, by engaging in the

26 conduct described above, directly or indirectly, made use of means or instruments of

27 transportation or communication in interstate commerce or of the mails, to offer to sell or to sell

28 securities, or to carry or cause such securities to be carried through the mails or in interstate

1 │ commerce for the purpose of sale or for delivery after sale.

2 │     57.    No registration statement has been filed with the Commission or has been in
3 │ effect with respect to the offering alleged herein.

4 │     58.    By engaging in the conduct described above, Defendants AMM, BD&C, and
5 │ Pacheco, and each of them, violated, and unless restrained and enjoined will continue to violate,
6 │ Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

7 │ <u>**SECOND CLAIM FOR RELIEF**</u>

8 │ **FRAUD IN THE OFFER OR SALE OF SECURITIES**

9 │ **Violations of Section 17(a) Of the Securities Act**

10 │ **(Against All Defendants)**

11 │     59.    The Commission realleges and incorporates by reference paragraphs 1 through 54
12 │ above.

13 │     60.    Defendants AMM, BD&C, and Pacheco, and each of them, by engaging in the
14 │ conduct described above, directly or indirectly, in the offer or sale of securities by the use of
15 │ means or instruments of transportation or communication in interstate commerce or by use of the
16 │ mails:

17 │         a.    with scienter, employed devices, schemes, or artifices to defraud;

18 │         b.    obtained money or property by means of untrue statements of a material
19 │             fact or by omitting to state a material fact necessary in order to make the
20 │             statements made, in light of the circumstances under which they were
21 │             made, not misleading; or

22 │         c.    engaged in transactions, practices, or courses of business which operated
23 │             or would operate as a fraud or deceit upon the purchaser.

24 │     61.    By engaging in the conduct described above, Defendants AMM, BD&C, and
25 │ Pacheco, and each of them, violated, and unless restrained and enjoined will continue to violate,
26 │ Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

27 │

28 │

1                **THIRD CLAIM FOR RELIEF**

2         **FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES**

3     **Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

4                   **(Against All Defendants)**

5        62.     The Commission realleges and incorporates by reference paragraphs 1 through 54

6 above.

7        63.     Defendants AMM, BD&C, and Pacheco, and each of them, by engaging in the

8 conduct described above, directly or indirectly, in connection with the purchase or sale of a

9 security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the

10 facilities of a national securities exchange, with scienter:

11            a.      employed devices, schemes, or artifices to defraud;

12            b.      made untrue statements of a material fact or omitted to state a material

13                  fact necessary in order to make the statements made, in light of the

14                  circumstances under which they were made, not misleading; or

15            c.      engaged in acts, practices, or courses of business which operated or would

16                  operate as a fraud or deceit upon other persons.

17        64.     By engaging in the conduct described above, Defendants AMM, BD&C, and

18 Pacheco, and each of them, violated, and unless restrained and enjoined will continue to violate,

19 Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. §

20 240.10b-5.

21                **FOURTH CLAIM FOR RELIEF**

22             **FRAUD BY AN INVESTMENT ADVISER**

23      **Violations Of Sections 206 (1) and (2) of the Advisers Act of 1940**

24                   **(Against All Defendants)**

25        65.     The Commission realleges and incorporates by reference paragraphs 1 through 54

26 above.

27        66.     At all times alleged in this Complaint, Defendants AMM, BD&C, and Pacheco,

28 and each of them, were investment advisers as defined under the Advisers Act. Defendants

1   AMM, BD&C, and Pacheco held themselves out as being in the business of advising others as to

2   investing in covered call options, and managed the investments of the Funds in exchange for

3   compensation.

4        67.     Defendants AMM, BD&C, and Pacheco, by engaging in the conduct described

5   above, directly or indirectly, by the use of the mails or means and instrumentalities of interstate

6   commerce:

7              a.     with scienter, employed and are employing devices, schemes and artifices

8                   to defraud clients or prospective clients; or

9              b.     engaged in and are engaged in transactions, practices, and courses of

10                  business which operated as a fraud or deceit upon clients or prospective

11                  clients.

12       68.     By reason of the activities described herein, Defendants AMM, BD&C, and

13  Pacheco have violated and unless restrained and enjoined will continue to violate Sections

14  206(1) and (2) of the Advisers Act, 15 U.S.C. § 80b-6(1) and (2).

15  **FIFTH CLAIM FOR RELIEF**

16  **FRAUD BY AN INVESTMENT ADVISER**

17  **Violations of 206(4) of the Advisers Act of 1940 and Rule 206(4)-8 Thereunder**

18  **(Against All Defendants)**

19       69.     The Commission realleges and incorporates by reference paragraphs 1 through 54

20  above.

21       70.     At all times alleged in the Complaint, Defendants AMM, BD&C, and Pacheco,

22  and each of them, were investment advisers as defined under the Advisers Act.  Defendants

23  AMM, BD&C, and Pacheco held themselves out as being in the business of advising others as to

24  investing in covered call options, and managed the investments of the Funds in exchange for

25  compensation.

26       71.     Defendants AMM, BD&C, and Pacheco, by engaging in the conduct described

27  above, directly or indirectly, by use of the mails or means and instrumentalities of interstate

28  commerce:

1             a.     engaged in transactions, practices, or courses of business which operate as

2                       a fraud or deceit upon investors in the Funds;

3             b.     made untrue statements of a material fact or omitted to state a material fact

4                       necessary to make the statements made, in the light of the circumstances

5                       under which they were made, not misleading, to investors or prospective

6                       investors in a pooled investment vehicle; or

7             c.     otherwise engaged in acts, practices, or courses of business that were

8                       fraudulent, deceptive, or manipulative with respect to investors or

9                       prospective investors in a pooled investment vehicle.

10        74.     By reason of the activities described herein, Defendants AMM, BD&C, and

11 Pacheco have violated and unless restrained and enjoined will continue to violate Sections

12 206(4) of the Advisers Act, 15 U.S.C. § 80b-6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. §

13 275.206(4)-8.

14                                 **PRAYER FOR RELIEF**

15        WHEREFORE, the Commission respectfully requests that the Court:

16                                       **I.**

17        Issue findings of fact and conclusions of law that the Defendants committed the alleged

18 violations.

19                                     **II.**

20        Issue judgments, in a form consistent with Rule 65(d) of the Federal Rules of Civil

21 Procedure, permanently enjoining Defendants AMM, BD&C, and Pacheco, and their officers,

22 agents, servants, employees and attorneys, and those in active concert or participation with any

23 of them, who receive actual notice of the order by personal service or otherwise, and each of

24 them, from violating Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c),

25 Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), Section 10(b) of the Exchange Act, 15

26 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and Sections 206(1), 206(2),

27 and 206(4) of the Advisers Act of 1940, 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4), and Rule

28 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.

**III.**

Order the Defendants and the Relief Defendants to disgorge all ill-gotten gains from the illegal conduct alleged herein, together with prejudgment interest thereon.

**IV.**

Order Defendants AMM, BD&C, and Pacheco to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d), Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3), and Section 209(e) of the Advisers Act, 15 U.S.C. §80B-9(e).

**V.**

Issue, in a form consistent with Fed. R. Civ. P. 65, an order appointing a receiver over Defendants AMM and BD&C and the assets thereof.

**VI.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

**VII.**

Grant such other and further relief as this Court may determine to be just and necessary.

DATED: June 23, 2009

Peter Del Greco

Peter F. Del Greco
Attorney for Plaintiff
Securities and Exchange Commission

**JS 44** (Rev. 12/07)

# CIVIL COVER SHEET

## ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
SEE ATTACHMENT

2009 JUN 24  AM 10: 36

CLERK-US DISTRICT COURT
SOUTHERN DISTRICT OF San Diego County

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  San Diego County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
John M. McCoy III and/or Peter F. Del Greco   (323) 965-3998
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036

Attorneys (If Known)   **'09 CV 1355  W    RBB**

SEE ATTACHMENT

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☒ 1  U.S. Government Plaintiff | ☐ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                      and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 |

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. §§ 77e(a), 77e(c) & 77q(a); 15 U.S.C. § 78j(b) & 17 C.F.R. § 10b-5; 15 U.S.C. §§ 80b-6(1) & 80b-6(2); 15 U.S.C. § 80b-6(4) &
Brief description of cause:
The Complaint alleges violations of the federal securities laws.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $ ____    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE  Michael M. Anello      DOCKET NUMBER  3:08-cv-0764 MMA (NLS)

DATE  6-23-09
SIGNATURE OF ATTORNEY OF RECORD  *Peter Del Greco*

**FOR OFFICE USE ONLY**

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

Waived

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: <u>47 USC 553</u>
                                                                                 Brief Description: <u>Unauthorized reception of cable service</u>

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## SEC v. MOISES PACHECO, et al.
### United States District Court – Southern District of California

Attachment to Civil Cover Sheet

### I(a)   DEFENDANTS

Moises Pacheco, Advanced Money Management, Inc., and Business Development & Consulting Co.

### RELIEF DEFENDANTS

AP Premium Value Fund I Limited-Liability LP; AP Premium Value Fund II, LLC; AP Premium Value Fund III, LLC; AP Premium Value Fund IV, LLC; Capital Partnership Group, LLC; AP Capital, LLC; Real Estate Investment Group, LLC; Matthew La Madrid; The Premium Return Fund III Limited-Liability LP; Palladium Holding Company; Donald E. Lopez; Four Square Productions, Inc.; and Arturo Castanares

### I(c)   ATTORNEYS

Todd W. Burns, Esq.
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
Telephone: (619) 234-8467
*Attorney for Defendant Moises Pacheco*

Joseph N. Casas, Esq.
Casas Law Group, P.C.
2323 Broadway, Suite 202
San Diego, CA 92102
Telephone: (619) 692-3146
*Attorney for Relief Defendant Matthew La Madrid*

Stephen J. Donell
c/o Joshua del Castillo, Esq.
Allen Matkins Leck Gamble Mallory & Natsis LLP
515 South Figueroa Street, 9th Floor
Los Angeles, CA 90071-3398
Telephone: (213) 622-5555
*Receiver for Relief Defendant The Premium Return Fund III Limited-Liability LP*

Michael L. Lipman, Esq.
Coughlan Semmer & Lipman LLP
501 W. Broadway, Suite 400
San Diego, CA 92101-3505
Telephone: (619) 232-0800
*Attorney for Relief Defendants Donald E. Lopez and Palladium Holding Company*